## DOWNING et al. v. JEFFREY et al.

### No. 6217.

Court of Civil Appeals of Texas. Texarkana.

June 6, 1946.

Rehearing Denied June 27, 1946.

Edwin M. Fulton, of Gilmer, W. W. Harris, of Quitman, and W. C. Hancock, of Pittsburg, for appellants.

Jones & Jones, of Mineola, for appellees.

HALL, Chief Justice.

This is a trespass to try title suit for an undivided one-half interest, subject to the rights of the oil and gas lessee, Stanolind Oil and Gas Company, in certain described land in Wood County, filed by H. S. (Howell) Downing, H. H. (Hoy) Downing, Haskell Downing, and H. W. (Harl) Downing, as plaintiffs in the trial court against Sam Jeffrey, appellee herein, and Stanolind Oil and Gas Company, a corporation, as defendants in the trial court. Appellants' first amended original petition, upon which they went to trial, is in statutory form. Appellee, Sam Jeffrey, answered by general denial, plea of not guilty, the four years' statute of limitation as to personal actions, and the three, five and ten years' statutes of limitation as to real property actions. The appellee,

Sam Jeffrey, by cross-action sued the appellants in statutory trespass to try title for the same land involved in the original suit. By supplemental pleadings appellants specially plead the minority of Haskell Downing and H. W. (Harl) Downing and appellants answered the cross-action of appellee by plea of not guilty, and also plead the statutes of limitation. Judgment was rendered for appellee upon the verdict of the jury.

This is a second trial of this case and also a second appeal. In the first trial the court below instructed the jury to return a verdict for appellee, Sam Jeffrey. Upon appeal that judgment was reversed and the cause remanded by the Galveston Court of Civil Appeals (the case having been transferred to the Galveston Court by the Supreme Court), 173 S.W.2d 241, writ of error refused for want of merit. The facts of the case are given with much detail by the Galveston Court, and reference is here made to that opinion for a detailed statement of the case.

Appellants assert in their point No. 2, that the trial court erred in rendering judgment against them for the reason that: "The evidence in this case is conclusive as a matter of law, that the appellee, Sam Jeffrey, was not a bona fide purchaser for value of the land in controversy without notice of the claim and title of appellants." Only two special issues were submitted to the jury. The jury found in answer to Special Issue No. 1 that on the date H. F. Downing, the father, holder of the legal title, and his second wife delivered the deed to appellee conveying the land in controversy, Howell Downing, the son, was residing thereon. Bearing on the question of notice the trial court submitted Special Issue No. 2, to the jury, reading: "Do you find from a preponderance of the evidence that if Sam Jeffrey had, before accepting the deed to the land, made inquiry of Howell Downing as to whether he claimed any interest in the land at that time, that he, Sam Jeffrey, would have learned by such inquiry that Howell Downing and his brothers, or some of them, were then claiming an interest in the land?" The above issue was answered in the negative.

Special Issue No. 2 is a basis for appellants' Point Three wherein it is asserted that the court erred in submitting said issue to the jury because it allowed the jury "to speculate in 1945 as to what the appellee, Sam Jeffrey, would have discovered if he had made a diligent inquiry in 1934." Points Two and Three will be discussed together as they relate to the same question.

H. F. Downing was twice married; the first wife, who died in 1917, was the mother of appellants. The land in controversy was community property of H. F. Downing and his first wife, hence appellants' asserted title to an undivided one-half of this land is an equitable one derived by inheritance from their deceased mother. Shortly after the first wife's death H. F. Downing married his present wife, and, joined by her, conveyed the land in controversy on November 28, 1934, to appellee for a recited consideration of $100 cash, three vendor's lien notes aggregating the sum of $400. and the assumption of $580. due the Federal Land Bank, which latter indebtedness was secured by a vendor's lien on the property. The entire consideration has been paid by appellee. The record discloses that on the date of the delivery of the deed from H. F. Downing and wife to appellee one of the appellants, Howell Downing, was living upon the land with his family. This fact was found by the jury in answer to Special Issue No. 1, and has ample support in the evidence.

It is a general rule of law firmly established by the authorities of this state that "possession of real estate 'is equivalent to registration' (Mainwarring v. Templeman, 51 Tex. 205), and is constructive notice of the possessor's right or claim, in that, as a matter of law, it puts a purchaser upon inquiry as to the nature of the claim of right of the possessor, and in the absence of proper inquiry the law charges the purchaser with notice of that claim upon the presumption that proper inquiry would disclose it." Ramirez v. Bell, Tex.Civ.App., 298 S.W. 924, 926, writ refused. So the purchaser here, appellee, was charged, as a matter of law, with knowledge of every fact relative to Howell Downing's claim to the premises here involved which a

proper inquiry by him would have revealed at the time of his purchase from the father, H. F. Downing. Stating it another way, appellee was charged only with such facts which a proper inquiry would have revealed if it had been made at the time of the sale. Since appellee made no inquiry except of the seller, it becomes necessary now to determine from the record before us what he would have learned at the time of the purchase had he made a proper inquiry. It was said by the Galveston Court of Civil Appeals on the former appeal of this case, Downing v. Jeffrey, supra, [173 S.W.2d 244]: "We think that the conduct of appellant H. S. (Howell) Downing was such at the time and following the purchase of the land that a finding by a jury to the effect that H. S. Downing only claimed to be in possession under the title of his father would be sustained." The above statement is based partly on the circumstance that Howell Downing did not testify upon the former trial. Quoting further from that opinion: "But it seems clear that the failure of a purchaser to inquire of a person in possession of land will not charge such purchaser with notice of rights in such possessor which were not then claimed by such possessor. 'It would seem that the sole office which possession performs, in the matter of notice, is to put a person desiring to purchase upon inquiry, and that it has no effect in determining what the inquiry shall be, or of whom it shall be made.' Eylar v. Eylar, 60 Tex. 315. Certainly the rule is not so broad that it can charge a purchaser with knowledge of rights in the possessor which the possessor did not know himself that he owned, and therefore could not have apprised the purchaser of, had he made inquiry of him. Here the appellee did testify that he made inquiry of the father when his son would vacate, and the son thereafter did vacate according to what the father stated, which was after the sale had been completed in the sense that $100 was paid down and the deed delivered. This was undoubtedly much less than the value of the undivided half interest owned by the father in fee simple, and to which he could and did pass good title. A jury might well find that the appellee, in view of the fact that he only paid down $100, had made sufficient inquiry when he learned from the father (the seller) that his son would move away when the sale was complete (and another house to which he was to move ready for occupancy), which the son did do long before any more was paid on the purchase price." On rehearing the opinion continues: "In our former opinion we found that at the time appellants' father conveyed the land here involved to appellee, he owned the full title to an undivided half interest in said land, and held the legal title to the other undivided half interest in trust for appellants. We held that whether appellee had constructive knowledge of appellants' interest in the land when he purchased it *was a question of fact to be presented to the jury under proper instruction,* and reversed the judgment based upon the verdict instructed in his favor." (Italics ours.) On the question of there being an issue of fact with respect to the knowledge appellee would have obtained had he made a proper inquiry at the time of the sale, the opinion of the Galveston Court on the former appeal constitutes the law of the case, and we are in accord with that holding.

Respecting the attitude assumed by appellant Howell Downing, the possessor, toward the land in controversy, at the time of the sale to appellee by the father, the record reflects the following facts and circumstances: Appellee testified that after the preliminaries between H. F. Downing and himself relating to the sale of the land were completed, "Mr. Slaughter prepared the deeds and he brought them to my house; Mr. Slaughter had them all, he had the check in front of the deed, and two or three notes, and he said sign it; he brought them there and I looked at the check, I said, 'Mr. Downing, ain't there any abstract?' He said: 'The Federal Land Bank holds the abstract, and it is a good title; there is two loans on the place'; Well, I looked at the deed, and I went and got my other deeds and me and my wife looked at it, and he said, 'Sam, I wouldn't sell you anything that was crooked'; he said, 'the title is good,' and I then signed my name on the check and the notes. He said, 'Now you sign the notes,' and I done that; he taken

them and went on, and here is what he said to me when he walked out, he said, 'I want to recommend Johnny Goodson to you, let him live on the place,' that's what he said." In this connection appellee testified further: "I said, 'Haven't you got an abstract?' he (H. F. Downing, the seller) said, 'The Federal Land Bank holds the abstract, there is two loans on it,' he said, 'You know it's good or they wouldn't loan money on it.' I said, 'Well, I always heard that.'" The witness Travis Holmes testified that about the 15th or 20th of November, 1934, before the sale of the land to appellee on November 28, 1934, he had a conversation with Howell Downing, the possessor, in which he (Howell Downing) told him that he had sold his interest in the land in controversy to his father. This witness also testified to similar statements about the same time, made to him by appellants, Harl and Hoy Downing. The witness Holmes testified further that the Downing boys told him that their father was going to sell the land to Sam Jeffrey and Howell Downing said he was going to move; that they had all sold their interest to their father. These statements were made a short time before the sale of the land by the father to appellee. Howell Downing, the possessor, testified that he was living on the land during the years 1933 and 1934, and was claiming it for himself and his three brothers; he testified further that he moved from this farm about December 15, 1934, "on another place belonging to my dad, known as the Greer farm, I believe." Howell Downing also testified that if appellee had inquired of him respecting his occupancy of the land before the sale, "I would have told him that I had an interest in the place, and also my brothers, four of us all told had an interest, that it belonged to my mother in her lifetime, it was acquired at that time and we felt like we had an interest there, which we did." It is undisputed that the father, H. F. Downing, rented this land for his son Harl Downing, during the year 1937, the elder Downing paying the rent amounting to $75. In this connection appellee testified: Q. "Had Harl Downing tried to rent the property from you?" A. "Yes, sir; he come and spoke to me about it, and I told him then, I said, 'You go and tell your papa and

let him come over here and I will make some kind of a deal with him, maybe,' and me and him traded, and he let the boy go down there and work." This occurred some three years after the sale of the property to appellee. On October 15, 1939, Howell Downing, the possessor, signed as a witness the following assignment of stock in the Federal Land Bank from his father to appellee:

"Assignment of National Farm Loan Association Stock.

"No. 23539 Through the Hawkins NFLA, having sold the land in Wood County, Texas, on which the Federal Land Bank of Houston holds the mortgage, for value received, I hereby assign to Sam Jeffrey, the purchaser of the land, whose post-office is Hawkins, the stock owned by me in the Hawkins National Farm Loan Association, now held by the Association as collateral for the payment of the above loan. I hereby authorize the Secretary-Treasurer of the Association to cancel the stock certificate and issue a new certificate in the name of the purchaser.

"Executed in duplicate at Hawkins, State of Texas, the 15th day of October, 1939.

"Signed H. F. Downing.
"Witness—H. S. Downing."

Howell Downing, the possessor, testified further:

"Q. And did your father tell you that he had sold this place to Sam Jeffries? A. Yes, sir.

"Q. And he told you to move, that he wanted possession? A. Well, yes, sir; something like that.

"Q. And you moved? A. I moved along in—oh, after the fifteenth of December.

"Q. You did move? A. Yes, sir; I moved off of it.

"Q. And you moved from there so that Sam could get possession, didn't you? A. Yes, sir.

"Q. That was your purpose in moving, to give Sam Jeffries possession of the land? A. Yes, sir."

■ The facts and circumstances detailed above, in our opinion, furnish suffi-

cient basis for the jury's negative answer to Special Issue No. 2, submitted by the court. Howell Downing was, as found by the jury, residing with his family upon the premises on the date of the sale. So the only question now is whether or not the failure of appellee to make inquiry of Howell Downing, the possessor, as to his right of possession would, as a matter of law, defeat his purchase as being not in good faith. Under the facts and circumstances of this case we think that the appellee should not be denied the right to show and establish at the trial the attitude of appellant Howell Downing toward this property on the date of sale. If an inquiry by the appellee of Howell Downing at the time of the sale would have brought forth similar statements to those made by him to the witness Holmes just a few days prior to the sale, to the effect that appellants had sold their interest in the land to their father, appellee's grantor, then certainly the purchase by appellee would have been in good faith. The jury had a right to believe that Howell Downing would have made similar statements to appellee had he made inquiry of him at the time of the sale that he did to the witness Holmes; that is, that he and his brothers had sold their interest to their father and that he was going to move. Especially is this true when all the other facts and circumstances contained in this record are considered in connection therewith. The weight to be given the facts and circumstances was for the jury to determine. It no doubt considered Howell Downing's present claim to this land, as against his statement of non-claim to the witness Holmes a short time before the sale to appellee, in the light of the present enhanced value of the land brought about by the discovery of oil upon it. That was within the jury's province. It would hardly be safe to substitute Howell Downing's present claim to this land with the oil upon it for the non-claim asserted by him at the time of appellee's purchase. Moreover, Howell Downing testified that at the request of his father, he moved off this land about the 15th of December following the sale to appellee on the 28th of November and he "moved from there so that Sam Jeffrey could get possession." That was the

purpose of his moving. He also testified that he moved "onto another of his father's farms to give Sam Jeffrey possession of the land." (Italics ours.) It is said in Pomeroy's Equity Jurisprudence, 5th Edition, Vol. 2, page 681, Sec. 616:

"Possession is not notice of a stranger's title, as for example, the unrecorded title of one claiming adversely to the possessor. Nor is the possession notice or rights of which the possessor is ignorant, and of which, therefore, he can impart no information." Bowles v. Belt, Tex.Civ.App., 159 S.W. 885, writ refused.

In 46 C.J., page 547, § 36(c), it is said: "The omission of the party to make inquiry cannot be material where such inquiry would not have led to a knowledge of the fact with the notice of which it is sought to charge him. The question is whether the inquiry, if it had been made, would have afforded information on any fact material to his rights. If his conduct would have been the same whether he had or had not made inquiry, his omission cannot be a reason for charging him with notice."

These points are therefore overruled.

■ Appellants assert by their Point 4 that the trial court erred in admitting the testimony of witness Henry Cobb to the effect that H. F. Downing, the father, told him he had settled with his children. The testimony of the witness Cobb was properly introduced to impeach the witness Downing, who denied that he had ever made a statement to Cobb to the effect that he had settled with his children, and has direct bearing on his credibility as a witness. This point is overruled.

■ By Point 5 appellants contend that the court erred in admitting the testimony of the witness Travis Holmes to the effect that he had heard all the appellants except one say that they had sold their land in controversy to their father. We think that this evidence was material and properly admitted, as showing a non-claim by the possessor, Howell Downing, of the land in controversy some eight or ten days before the deed conveying same was delivered to appellee. It tends to show the attitude assumed by Downing, the possessor, toward

the land immediately before the sale to appellee and what information he would have imparted to appellee had he made inquiry of him as to his right of possession at the time of the sale.

We have examined all other points advanced by appellants. They are without merit and are overruled.

Judgment of the trial court is affirmed.