CONSOLIDATED CASUALTY INSURANCE COMPANY, Appellant,

v.

Emmett F. SMITH, Appellee.

No. 13130.

Court of Civil Appeals of Texas. Houston.

Jan. 9, 1958.

Rehearing Denied Jan. 30, 1958.

Frank G. Harmon, Paul W. Persons, Houston, Baker, Botts, Andrews & Shepherd, Houston, of counsel, for appellant.

Dixie, Ryan & Schulman, Smith & Lehmann, M. A. Lehmann, Houston, for appellee.

BELL, Chief Justice.

Appellee, as plaintiff, brought this suit to recover compensation for permanent partial disability alleged to have resulted from an injury received by him as an employee of the Sinclair Refining Company.

This is the second appeal of this case. On the first trial the trial court instructed a verdict against appellee on the theory that since he had returned to work he had earned more weekly wages than previous to his injury and, therefore, as a matter of law, his capacity to work and earn money had not been lessened. This Court reversed and remanded the case, holding that testimony concerning earnings was merely evidentiary on the issue of earning capacity within the meaning of the Workmen's Compensation Law, Vernon's Ann.Civ.St. art. 8306 et seq., 290 S.W.2d 589 (ref.n.r.e.). On trial after remand, the jury found that his earning capacity had been impaired 12½ per cent. and the trial court rendered judgment on such verdict in favor of appellee.

On September 24, 1953, appellee stuck a nail in his foot and was immediately given a tetanus shot at the employer's first aid station.

About a week after the accident, plaintiff developed a severe reaction, with severe pain all over his body, his joints ached and he had muscle spasms and was very nervous. The day following the accident he went to see Dr. Mock, who lived at La Porte, where plaintiff lived. Dr. Mock, after giving him a treatment, got in touch with the Sinclair Refining Company's physician to see if he wanted to take over, but since Dr. Mock had started the treatment and since plaintiff lived in the same town with Dr. Mock, the company's physician suggested that Dr. Mock continue to act as plaintiff's physician. After laying off from work for some seven weeks, for which period the defendant paid the full compensation benefits for which it was liable, the plaintiff returned to work. Plaintiff had a relapse in January, 1954, with great pain, and was unable to control his muscles. Again hives broke out on his body. Plaintiff had another reaction in March, 1954, and remained under his doctor's care until May, 1954. Plaintiff has been taking the medicine prescribed by his doctor every day since the early part of October when the reaction developed, and among the medicines he takes is codeine for relief of his pain. Plaintiff testified that his condition still bothered him at the time of the trial and since May, 1954, there had been no improvement in his condition.

Plaintiff's job does not require much physical exertion for the most part, but when he has a task which calls for unusual strain, his co-employees assist him. Plaintiff testified that he could move empty barrels but he had to get someone else to move the full ones because he knew that when he undertook to do any heavy work he would cause the pain in his muscles to start up and he would be unable to work. With evident purpose to qualify under the "whiplash of economic necessity" decisions he testified: "A. I have been able to take care of my job, and I do it, I guess, to the satisfaction of the foreman, although I have help on my job, and it is in great pain that I do it and under stress or strain, and like I say, I have to take my medicine out there to keep going. The reason I do this, it is not only me, I probably could lay off when I get into it, but I have a wife and three kids to take care of and it is not me I am thinking about."

It was plaintiff's doctor's opinion that it would take a long time for a complete recovery from the fibromyositis, arthritis, and bursitis which he was suffering from at the time of the trial. It was plaintiff's doctor's further opinion that plaintiff had perma-

nent scar tissue in the soft tissue and around the joints and capsules, and that plaintiff has arthritis that impairs the motion and limits the usefulness of the joints. His physician would not pass him to do hard manual labor.

Defendant acknowledged that plaintiff had received a compensable injury and that in connection with it he had suffered a reaction from the tetanus treatment. It was defendant's contention that the evidence showed without dispute that plaintiff's employment has been reasonably suited to his physical condition and capacity down to the present time and that the evidence further shows that plaintiff will be able to continue in such employment. The evidence undoubtedly shows that plaintiff was being paid at the same rate of pay as he received prior to the accident and that he has earned the same or greater wages as he earned before the accident; and defendant strongly urges that the evidence shows that he had been paid during the seven weeks all of the benefits he was entitled to under the Workmen's Compensation Law. The evidence did undoubtedly show that plaintiff had recovered from the reaction from the tetanus shot and was suffering at the time of the trial from arthritis, bursitis or fibromyositis. Plaintiff's physician agreed that such conditions could have developed without the occurrence of the tetanus shot, if it were assumed that plaintiff had a history of having hypertrophic arthritis before receiving the shot. It is unquestionably true that the evidence shows without dispute that plaintiff did have such arthritis in his right knee prior to the accident in question; however, the doctor stated that the severe reaction aggravated plaintiff's condition.

The above facts are exactly the same as developed on the first trial, the statement of facts on this appeal, except as specifically noticed below, being a copy of the statement of facts filed on the previous appeal. A very short supplemental statement of facts is also filed. It contains testimony of appellee dealing with his weekly earnings since his return to work. This is the additional testimony brought forward in the short supplemental statement of facts.

"Q. All right, sir, so that in spite of the aches and pains you have had you have been capable of performing, so far as this job, for producing earnings which have run anywhere from $120.00 to $132.00 a week on the average, isn't that right? A. Yes, I worked this job. I think we have proved that. We have showed you I made these hours. They paid you for the number of hours you work on your job; your time card. I have been in the refinery all those hours. As far as that is concerned, I think that the disability is not pertaining to this type job because I was a whole lot better man before I had that infection than I am now, and I have had to withdraw from a lot of things. My condition has been changed. I have to watch my diet and things like that. I have to eat the right things. If I happen to get hold of some horse meat sometime it will hit it off again.

"Q. You remember when we were in here yesterday and Mr. Lehman was examining the Jury panel he asked them that merely the fact a man received wages,—A. (interrupting) Yes, sir, I receive wages.

"Q. And in spite of the pain you have had you have still been capable of performing the job you have had since 1953, and that is a job on which you earn $120.00 to $132.00 a week? A. I am just one of the men out there that earn it. Other men have been earning that or more.

"Q. But isn't that true? A. Yes.

"Q. If you have been capable of performing that job, Mr. Smith, then you have been capable of earning $120.00 to $132.00 a week since you went back to work? A. I think I

have answered about 10 times. I have told you 'yes'. How many more times do I have to answer it?"

Appellant's counsel then asked this question: "Will you agree that since you went back to work in November, 1953, up to this time that your earning capacity has been $120.00 to $132.00 a week?" This question was objected to on the ground that this invaded the province of the jury, that the earnings were evidence but earning capacity was for the jury. The objection was sustained, and appellant was permitted out of the presence of the jury, to give his answer. His answer was, "Yes, I agree to that."

Appellant relies for reversal on these propositions:

1. The court erred in excluding the testimony of appellee that his wage earning capacity after his return to work exceeded his average weekly wage for the year preceding the injury.

2. The appellee having testified that his earning capacity after the injury exceeded his average weekly wages for the year preceding, the court erred in not rendering judgment for appellant.

3. The verdict of the jury is against the overwhelming weight and preponderance of the evidence because the greater and overwhelming evidence showed appellee's earning capacity was in excess of his average weekly wages for the year preceding the injury.

4. The court erred in submitting the question of partial incapacity in terms of percentage of earning capacity. The court should have submitted the requested issues of appellant which inquired as to the average weekly wage earning capacity of appellee during any partial incapacity which they should find existed.

■ The trial court correctly excluded the question which called upon appellee to give legal appraisal to the evidentiary facts which had been developed. This was the clear import of the question. To answer it required appellee to apply the legal definition of "partial incapacity". Properly this was for the jury. Really it amounted to asking for a legal conclusion. This is not proper. National Union Fire Insurance Co. of Pittsburgh, Pa. v. Richards, Tex.Civ. App., 290 S.W. 912; 31 C.J.S. Evidence § 272, p. 1026.

■ The above testimony being properly excluded, the evidence before us is the same as that which was before us on the previous appeal. On the previous appeal the sole question before this Court was the sufficiency of the evidence to raise a fact issue for the jury. We then held it to be sufficient. We do not now differ from the disposition then made of the case. The previous decision is the law of the case on the issue disposed of. Downing v. Jeffrey, Tex.Civ.App., 195 S.W.2d 696, ref., n. r. e.; Manziel v. Humble Oil & Refining Co., Tex.Civ.App., 214 S.W.2d 797, ref., n. r. e.

■ In the former appeal, however, we did not have before us the question of whether the verdict of the jury was against the overwhelming weight and preponderance of the evidence. We have, however, concluded that it was not. Appellant's contention is based on the fact that the evidence showed that since appellee returned to work he had earned more money per week than he averaged weekly for the year preceding the injury. This, of course, is not conclusive on the issue of impaired earning capacity. The other evidence in the case showed that these earnings were brought about by overtime. Appellee testified he had to put in a lot of overtime when he was really not physically able to do so, because there was no replacement for him. He also testified after there was a replacement he had to turn down some overtime because he was physically unable to do it. Too, any heavy work to be done on his job was done with assistance from others. Dr.

Mock testified he would not pass appellee to do hard manual labor.

 In determining diminished earning capacity, you do not consider alone the ability of the workman to do the immediate type of work he is on. He may not always be on this type of work. He must compete in the mart of labor for jobs of varying types. Some of them are very advantageous but require hard manual labor. A jury has a right to consider this factor, in the light of all the testimony, in determining lessened earning capacity. Texas Employers' Ins. Ass'n v. Evers, Tex.Civ.App., 242 S W.2d 906, ref., n. r. e.; Texas Employers' Ins. Ass'n v. Taylor, Tex.Civ.App., 276 S W.2d 901, ref., n. r. e.

Appellant finally contends the court erred because it submitted the issue of the extent of diminished earning capacity on a percentage basis and did not inquire as to appellee's average weekly wage earning capacity following his return to work. Appellant contends since they affirmatively plead that his earning capacity was now just as great as it formerly was it was entitled to an affirmative submission of its theory.

This case was tried under the law as it existed prior to the passage of the amendatory act of 1957, amending Article 8306, § 11, V.A.T.S., and must be decided in the light of the law as it then existed.

There has been a recognized conflict in the decisions of the Courts of Civil Appeals. We need not prolong this opinion by discussing the various cases; a discussion of the various cases may be found in Baylor Law Review, Vol. IX, pp. 358–361, and in Texas Employer's Ins. Ass'n v. Spivey, Tex.Civ.App., 231 S.W.2d 760, ref., n. r. e.

This Court has followed the line of authorities holding it not to be error to submit the issue of the extent of impaired earning capacity on a percentage basis. American General Ins. Co. v. Bailey, Tex. Civ.App., 287 S.W.2d 290, ref., n. r. e.

We think the court sufficiently made an affirmative submission of appellant's theory. Texas Employer's Ins. Co. v. Spivey, supra.

Finding no error, the judgment of the trial court is affirmed.