**TRADERS & GENERAL INSURANCE COMPANY, Appellant,**

v.

**Henry VAUGHN, Appellee.**

No. 3394.

Court of Civil Appeals of Texas.

Eastland.

Oct. 24, 1958.

Rehearing Denied Nov. 14, 1958.

McMahon, Smart, Sprain & Wilson, Abilene, for appellant.

Perry Barber, Colorado City, for appellee.

COLLINGS, Justice.

This is a workmen's compensation suit. Henry Vaughn sought to recover compen-

sation from Traders & General Insurance Company for an alleged accidental injury to his back sustained on April 11, 1956, while in the employ of Foree Drilling Company. The case was tried before a jury which found that Vaughn did suffer the alleged injury and as a result sustained total incapacity to work for a period of 35 weeks and thereafter suffered or will suffer a 40 percent partial incapacity for a period of 156 weeks. Traders & General Insurance Company has appealed from the judgment entered on the verdict.

It is contended by appellant that the court erred in entering judgment for Vaughn because there was no evidence or, in the alternative, that the evidence was insufficient to support the findings that Vaughn suffered 35 weeks total incapacity and 40 percent partial incapacity for a period of 156 weeks. Appellant also urges that such findings were so against the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust.

The evidence shows that Henry W. Vaughn did sustain a serious injury to his back on April 11, 1956, while he was in the employ of Foree Drilling Company, working as a roughneck on a drilling rig. The evidence also shows that Vaughn was strong and vigorous, far above the average workman prior to his injury; that he was called the "lead-off man" because he was always ahead of everybody else on the rig; that the work of a roughneck on a drilling rig is hard work and Vaughn was above the ordinary roughneck. Vaughn reported for work for two or three days after his injury, but testified that he was unable to work; that another man was on the job who did the work under Vaughn's direction. There was other evidence that Vaughn tried to work during this period but was unable to do so. He was then placed under the treatment of a doctor and hospitalized in Colorado City for approximately ten days. He continued to receive treatments from the doctor after he left the hospital. He was also examined and treated by a doctor in Midland who prescribed a back support which he has since worn almost constantly. He thereafter returned to work for the Foree Drilling Company. There was evidence to the effect that although Vaughn reported back to work after his hospitalization and treatment and was on the job for about eleven days, he was still unable to work; that he was in constant pain; that he tried to perform the work required of him but just couldn't do it. His job with Foree Drilling Company terminated about the first of June, 1956, when the entire crew was laid off. The evidence is undisputed that he was not discharged. Thereafter in the latter part of June, Vaughn obtained a job as a cook with Boatwright's Truck Stop in Colorado City at $46 per week. The evidence indicates that on this job he was not required to do lifting, or scrubbing, or to stoop or bend over. His sole job was to cook and to do work which could be done standing. Between orders he could sit on his stool and rest. After about two months the truck stop was sold to Tate Brothers. Vaughn retained his employment with Tate Brothers in the same capacity until the latter part of December, 1956, when he voluntarily left their employment. During his employment with Tate Brothers he was paid $70 per week.

In our opinion there was ample evidence to support the finding that Vaughn was totally incapacitated until the time of the termination of his job with Foree Drilling Company. Numerous cases hold that the fact that an injured employee, under the stress of circumstances, resumes work after an injury and earns the same or more money than he did before the injury in the same or similar type of work is not a bar to recovery for total and permanent disability, if other evidence shows such disability. Texas State Highway Dept. v. Kinsler, Tex.Civ.App., 230 S.W.2d 364 (Writ Ref.); Traders & General Ins. Co. v. Collins, Tex.Civ.App., 179 S.W.2d 525 (Ref.W.M.). There was ample evidence that Vaughn sustained a

serious injury and that he suffered great pain during the period in question. He and other witnesses testified that he was not able to work during the time that he was on the job with Foree Drilling Company after his injury and that he made the effort to work only because of the need to support his family. The fact that under these circumstances he continued to stay on the job about three days after his injury and then after ten days treatment and care in the hospital and additional treatment from doctors, went back on the same job and for about ten or eleven days tried to do work which he did not have the ability to perform does not as a matter of law deprive him of the right to recover compensation for total incapacity. Federal Underwriters Exchange v. Tubbe, Tex.Civ.App., 193 S.W.2d 563, 566 (R.N. R.E.); Trinity Universal Ins. Co. v. Rose, Tex.Civ.App., 217 S.W.2d 425 (R.N.R.E.) and Southern Underwriters v. Grimes, Tex. Civ.App., 146 S.W.2d 1058 (D.J.C.). Neither does the fact that Vaughn, under the stress of circumstances, thereafter obtained a job and worked as a cook until the latter part of December, 1956, necessarily bar his recovery for total incapacity. Texas Indemnity Ins. Co. v. Bonner, Tex.Civ.App., 228 S.W.2d 348 (R.N.R.E.). As previously indicated there was ample evidence that Vaughn was totally incapacitated prior to the time that he obtained work as a cook. He was examined by a doctor shortly after his work as a cook terminated, who testified that in his opinion Vaughn had a total and permanent disability for performing heavy work. Vaughn's wife testified that since the time of his injury on April 11, 1956, he has complained of pain constantly; that he always comes home from work complaining that his back hurts; that she or her daughter has had to rub his back practically every night; that he has had to wear a brace all the time except when it was being washed and then he wore a big leather belt. Vaughn testified that when he took the cooking job he did so with the under-standing that he did not have to do any scrubbing, cleaning or lifting; that he was not required to do any of that kind of work for either Mrs. Boatwright or the Tate Brothers for whom he worked as a cook. In our opinion, the evidence was sufficient to support the finding that Vaughn was totally incapacitated for a period of 35 weeks after the date of his injury. The fact that under the stress of circumstances he obtained and held a job as a cook during a portion of that time did not render the finding against the overwhelming weight of the evidence. Traders & General Ins. Co. v. Collins, supra; Southern Underwriters v. Grimes, supra.

■ We overrule appellant's points complaining of the lack of evidence and insufficiency of the evidence to support the jury finding that Vaughn suffered or will suffer forty percent partial incapacity for a period of 156 weeks beginning January 1, 1957. We also overrule the contention that the finding of forty percent partial incapacity is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

■ In this connection it appears that after Vaughn left the employment of Tate Brothers he secured a job with F. & F. Well Service Company of Midland, Texas, a company operated by his brother, Herman Vaughn, although he was not the owner. The company was in the business of servicing oil wells, doing such work as pulling tubing, rod jobs and setting plugs. Vaughn worked for the company principally as a derrick man. During his employment with the company he has been paid an average wage of approximately $116.52 per week. He has worked an average of 96.5 hours per week and has received average weekly wages of $26.52 in excess of his stipulated average weekly wage prior to his injury. Vaughn was still working for the company as a derrick man at the time this case was tried. The fact that an injured employee works and earns the same or more money

after his injury, however, is not conclusive on the issue of his incapacity to perform labor, but is evidentiary only. Texas Emp. Ins. Ass'n v. Evers, Tex.Civ.App., 242 S.W. 2d 906 (R.N.R.E.). There was other evidence to the effect that the work of a derrick man on a servicing unit is not as difficult as that of a roughneck or a derrick man on a drilling rig; that it requires no lifting and very little stooping or bending; that it does not require a great deal of strength; that from a standpoint of strength, a ten or eleven year old boy could do the work if he had the experience and know how. The evidence indicates that Vaughn's back hurts continually whether he is working or not; that he is not able to do the work of a roughneck on a drilling rig which he was doing when he was hurt, because it requires lifting and other strenuous work which he cannot do. There are some tasks of his present job which the evidence indicates he is unable to perform, but he has so far held his job to the satisfaction of his employer although he lets fellow workmen take care of these tasks. He testified that his back bothers him all the time he is working. There is evidence that he complains of much pain, but that he has continued to work since his injury because of the necessity of supporting his family. There was medical testimony to the effect that Vaughn has a total permanent disability for performing any heavy work. The evidence supports the finding that Vaughn has or will suffer forty percent partial incapacity for a period of 156 weeks and it is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. Texas Emp. Ins. Ass'n v. Taylor, Tex.Civ. App., 276 S.W.2d 901 (R.N.R.E.); Texas Emp. Ins. Ass'n v. Evers, supra; Texas Emp. Ins. Ass'n v. Goforth, Tex.Civ.App., 307 S.W.2d 610 (R.N.R.E.); Consolidated Cas. Ins. Co. v. Baker, Tex.Civ.App., 297 S.W.2d 706 (R.N.R.E.); Commercial Casualty Ins. Co. v. Strawn, Tex.Civ.App., 44 S.W.2d 805 (Writ Ref.) and cases cited therein.

Special issue number eight and the jury's answer were as follows:

"From a preponderance of the evidence, what do you find to be the difference, if any, between the average weekly wage of the plaintiff prior to April 11, 1956, and his average weekly wage earning capacity during the existence of such partial incapacity, if any you have found?

"Answer by giving the difference, if any, in percentage.

"Answer: 40%."

■ Appellant made no objection to this issue at the time of its submission. Appellant contends that, notwithstanding its failure to object to special issue number 8 as submitted, the court erred in entering judgment on the verdict. Appellant urges that the issue as framed is so confusing that it is impossible to ascertain what the jury was called upon to answer, or the effect of the answer thereto; that the issue, in addition to making an inquiry of fact, required the jury to make a mathematical calculation; that the issue required a dollar and cents answer, and although the court requested an answer "in percentage", it was not capable of being answered in terms of percentage. We cannot agree with the contention that special issue number 8 was not capable of being answered in terms of percentage or that it is impossible to tell what the jury was called upon to answer, or to tell the effect of the answer. The issue is somewhat involved and confusing and an objection on that ground at the time of its submission would in our opinion have been good. No such objection was made to the trial court. It was, therefore, waived and cannot be urged on appeal. Rules 274 and 279, Texas Rules of Civil Procedure; Pullen v. Russ, Tex.Civ.App., 226 S.W.2d 876 (R.N.R.E.).

As reflected by defendant's bill of exception number one, counsel for plaintiff, here

appellee, made the following remarks in his closing argument:

"Mr. Barber: Personally, I get my pride out of helping these old working boys. And I am on the right side of this case as far as I am concerned. And regardless of what you do in answer to these questions, I will still have the same opinion. It is hard to fight money. You have seen that demonstrated in this trial * * *

"Mr. Sprain (Attorney for defendant): Your Honor, that is objectionable argument, and we ask that the jury be instructed not to consider it.

"The Court: I will ask you not to consider that.

"Mr. Barber: All right, you have seen it demonstrated in the trial of this case what a man is up against * * *

"Mr. Sprain: Your Honor, we object to that argument and ask that they be instructed not to consider it."

No ruling was made by the Court relative to the latter objection.

Attorney for appellee then continued by making the following remarks, shown by defendant's bill of exception number two:

"Mr. Barber: If they had paid him what they should have paid him and what they are obligated to pay him, he never would have got in the courthouse. They forced him to hire a lawyer. They forced him to come into court and file a lawsuit. They forced him to try this lawsuit.

"Mr. Sprain: Your Honor, that is out of the record. There is no evidence in this record that we forced him to do anything.

"Mr. Barber: Well, he is here, isn't he?"

No ruling was made by the court relative to this latter objection.

The above bills of exceptions were qualified by the court by attaching the entire argument of appellee's attorney and by the statement that the defendant's attorney in his voir dire examination told the jury that this was a case of an insurance company on one side and a laboring man on the other; that the insurance company had plenty of money, but that the case was not to be decided on who had the most money, but from the evidence in the case.

In point number 9 appellant contends that the trial court erred in failing to discharge the jury and declare a mistrial because the argument of plaintiff's counsel, repeatedly compared and contrasted the wealth of the plaintiff and the defendant; that the argument engendered such a high degree of prejudice and passion that it could not have been cured by instruction from the court and undoubtedly resulted in the rendition of an improper judgment.

■ The portion of the argument principally complained of was: "It is hard to fight money. You have seen it demonstrated in this trial." Appellant contends, and correctly so, that this argument could be construed as a reference to the comparative wealth of the parties. The argument was improper, but it was not such an argument that the prejudicial effect could not be cured by an instruction to disregard it. King v. Federal Underwriters Exchange, 144 Tex. 531, 191 S.W.2d 855; Walker v. Texas Emp. Ins. Ass'n, 155 Tex. 617, 291 S.W.2d 298. Since the court instructed the jury not to consider the argument, there was no reversible error unless it, and alleged repeated similar argument, was incurably prejudicial and of such nature that the instruction to disregard could not remove the prejudicial effect. As already indicated the argument was not incurably prejudicial.

■ Attorney for appellee continued his argument to the jury stating: "All right, you have seen it demonstrated in the trial of this case what a man is up against * *."

Appellant's attorney objected without stating any ground except that the argument was "objectionable" and asked that the jury be instructed not to consider it. The court made no ruling concerning this objection. The argument complained of was not necessarily a reference to the comparative wealth of the parties. The general rule is that an objection, when made, must be pressed to a point of procuring a ruling or the objection is waived. Texas Emp. Ins. Ass'n v. Haywood, 153 Tex. 242, 266 S.W.2d 856.

The argument complained of in defendant's bill of exception number two, likewise, cannot be construed as an effort to compare the wealth of the parties. It was objected to on the ground that it was "out of the record". No ruling was made by the court concerning this objection and the objection was not pressed to the point of procuring a ruling. The prejudicial effect, if any, of the argument was not such that it could not have been cured by an instruction from the court not to consider it.

Appellant's complaint in point number nine concerns the failure of the court to discharge the jury and declare a mistrial because of alleged repeated references by appellee's attorney in his argument to the comparative wealth of the parties. The only argument which clearly showed a reference to the comparative wealth of the parties was objected to by appellant and the court properly sustained the objection and instructed the jury not to consider it. The other arguments which appellant now contends were references to comparative wealth were objected to at the time, but not on that ground and the objections made were not pressed to a ruling. As already indicated it is our opinion that these other arguments cannot be construed as references to comparative wealth. If such arguments could be so construed, the reference is so faint and indistinct that no reversible error is shown, particularly in view of the fact that appellant's counsel on voir dire examination of the jury also referred to the

matter. Appellant's point number nine is overruled.

We have carefully examined all points and find no reversible error.

The judgment of the trial court is affirmed.

WALTER, J., disqualified and not sitting.