**TRAVELERS INSURANCE COMPANY,**
Appellant,

v.

**J. R. TRUITT,** Appellee.

**No. 18136.**

United States Court of Appeals
Fifth Circuit.

July 12, 1960.

Rehearing Denied Sept. 21, 1960.

Paul W. Persons, Houston, Tex., Baker, Botts, Andrews & Shepherd, Houston, Tex., of counsel, for appellant.

W. James Kronzer, Freeman M. Bullock, Houston, Tex., Hill, Brown, Kronzer & Abraham, Houston, Tex., of counsel, for appellee.

Before CAMERON, JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

Here we are called upon to apply Texas substantive principles for recovery under its Workmen's Compensation Statute. Tex.Civ.Stat., arts. 8306–8309 (Vernon's Ann.Civ.St.). The District Court, based on a jury verdict submitted on a special interrogatories finding the Employee totally disabled for 301 weeks, entered judgment for the Employee. Truitt v. Travelers Ins. Co., D.C.S.D. Tex., 1959, 175 F.Supp. 67. From this judgment the Employer's Insurer appeals specifying nineteen errors which largely boil down to an assertion that the District Court failed to instruct the jury on the proper legal standard for recovery under the Texas Act and that the evidence would not permit a finding that the Employee was totally disabled for 301 weeks. In addition, the Insurer attacks the manner in which the verdict was reached. We find no error and affirm.

The Employee was working as an ironworker on the second story of a building under construction when he was injured on February 13, 1957. At the time of his injury, he was in a half-stooping position holding one end of an 80-pound iron rod when suddenly a supporting bar was released causing several other iron rods to fall jerking the Employee forward suddenly in a jackknife position. He was immediately placed in a wheelbarrow and lowered to the ground and taken to a company doctor who tentatively diagnosed his injury as an acute sprain of the lumbosacral muscles and a contusion of the right foot. The next day, the company doctor had him admitted to a hospital where he remained for eight days under the care of Dr. Donovan, the company's orthopedic surgeon. When he was released from the hospital, he was given a lumbosacral support, a corset-type garment to render support to the back. Dr. Donovan's examination resulted in his diagnosis, corroborating the tentative diagnosis, of a significant back sprain with symptoms of pain and muscle spasms. After his discharge from the hospital the Employee continued seeing Dr. Donovan who was treating him for his back injury. His last visit with Dr. Donovan (other than for a subsequent injury in August 1957 and a pretrial examination) was on June 10, 1957. The Insurer did not dispute the occurrence of the initial injury as alleged or the fact it occurred in the course of em-

ployment. Indeed, the Insurer assumed liability for compensation and medical expenses through June 26, 1957, at which time all payments were stopped. And there the harmony stopped and the dispute now being litigated began.

The Employee attempted to return to work, although he was, he says, still experiencing pain in his back and right leg. In November 1957 he consulted Dr. Glassman, an orthopedic surgeon, who diagnosed the Employee's back trouble as a slipped disc (or as Dr. Glassman termed it, a herniation of nucleus pulposus at the fifth lumbar interspace on the right side) and prescribed conservative treatment—use of a support, medication, and application of heat. At trial Dr. Glassman testified that in his opinion, based upon his examination and treatment, the Employee had a herniated disc caused by the jackknife injury, that the condition was permanent and that the Employee was disabled from doing heavy manual labor, bending or lifting.

At trial the Employee's prior job history was developed in great detail revealing that it was diverse but usually involved heavy manual labor of some sort requiring varying degrees of skill. His employment record subsequent to his injury was also gone into in great detail showing jobs of varying lengths and types. The Insurer made an effort to show that in fact the Employee is still earning substantially the same wages as he earned before his accident. Also, the Insurer attempted to show that the Employee suffered several injuries subsequent to the initial injury involved here and that if he is now in fact disabled it was due not to the initial injury but to the subsequent ones. The Insurer also made an effort to show that when the Employee's subsequent jobs were terminated, at least some were due to reasons unrelated to any physical disability. With like enthusiasm the Employee offered evidence to oppose any such conclusions. These, of course, are factual issues hotly disputed and the jury's resolution of them must stand unless not supported by any substantial evidence.

■ We deal, first, with the contention that the District Judge instructed the jury on the wrong standard for recovery under the Texas Act. Compensation under the Texas Act is recoverable when an on-the-job injury causes an incapacity for work.[1] Texas Employers' Ins. Ass'n v. Guidry, 1937, 128 Tex. 433, 99 S.W.2d 900, 902.

■■ The degree of the loss of earning capacity, the Texas Act prescribes, is measured in terms of "total incapacity" or "partial incapacity." But for each the statute speaks of "incapacity for work," note 1, supra. When it is total, the compensation disability is likewise total. The definition of total disability, confirmed positively in 1944 has not varied since 1931. Texas Employers' Ins. Ass'n v. Brock, Tex.Com.App.1931, 36 S.W.2d 704. It talks in terms of physical ability to work and earn. "The term 'total incapacity' * * * does not imply any absolute disability to perform any kind of labor, but a person disqualified from performing the usual tasks of a workman, in such a way as to enable him to procure and retain employment, is regarded as being totally incapacitated, or totally disabled." Texas Employers' Ins. Ass'n v. Mallard, 1944, 143 Tex. 77,

---

1. Tex.Civ.Stat., Art. 8306 (Vernon's Ann. Civ.St.).

§ 10. "Total incapacity, compensation.

"While the *incapacity for work* resulting from the injury is total, the association shall pay the injured employee a weekly compensation equal to sixty per cent (60%) of his average weekly wages * * *."

§ 11. "Partial incapacity, compensation.

"While the *incapacity for work* resulting from the injury is partial, the association shall pay the injured employee a weekly compensation equal to sixty per cent (60%) of the difference between his average weekly wages before the injury and his average weekly wage earning capacity during the existence of such partial incapacity * * *." (Emphasis supplied.)

182 S.W.2d 1000, 1001. 45 Tex.Jur. §§ 159, 156. It is too late to urge now that the Texas Courts have been wrong so long. As this vast and unwieldy body of law reflects, these terms are composite words calling for the evaluation of various factors. Thus physical disability or physical impairment while not the conclusive standard for recovery, is, of course, a highly relevant factor in determining loss of earning *capacity*. By the same token, the fact that an injured employee resumes work after an injury and earns substantially the same as before the injury is not a conclusive indication that there has been no loss of earning capacity, but is evidentiary only. Traders & General Ins. Co. v. Vaughn, Tex.Civ.App.Eastland, 1958, 317 S.W.2d 800, 802 (writ refused, n.r.e.); Consolidated Casualty Ins. Co. v. Newman, Tex. Civ.App.Texarkana, 1957, 200 S.W.2d 160, 162–163 (writ refused, n.r.e.); Consolidated Casualty Ins. Co. v. Baker, Tex. Civ.App.Waco, 1956, 297 S.W.2d 706, 716 (writ refused, n.r.e.); American General Ins. Co. v. Bailey, Tex.Civ.App.Galveston, 1956, 287 S.W.2d 290, 292 (writ refused, n.r.e.); Consolidated Casualty Ins. Co. v. Smith, Tex.Civ.App.Houston, 1958, 309 S.W.2d 80, 81, 84 (writ refused, n.r.e.); Smith v. Consolidated Casualty Ins. Co., Tex.Civ.App.Galveston, 1956, 290 S.W.2d 589 (writ refused, n.r.e.). There are other factors. As the Houston Court of Civil Appeals stated: "In determining diminished earning capacity, you do not consider alone the ability of the workman to do the immediate type of work he is on. He may not always be on this type of work. He must compete in the mart of labor for jobs of varying types. Some of them are very advantageous but require hard manual labor. A jury has a right to consider this factor, in the light of all the testimony, in determining lessened earning capacity." Consolidated Casualty Ins. Co. v. Smith, supra, 309 S.W.2d 80, at page 84. Obviously, actual wages received are also highly relevant.

As near as we can figure out the Insurer's objections to the Court's charge to the jury, it is this. The Court should not have spoken in terms of "incapacity for work," but should have added the three little words "to earn wages." In this way compensable disability, total or partial, would be for "incapacity for work to earn wages," or, more simply, "incapacity to earn wages." One objection seemed to challenge altogether any instruction "stating * * * that incapacity, partial or total, is a degree of physical disability * * *."

We confess to some bewilderment. The term "incapacity for work" is in a workmen's compensation statute. Men do not often work for fun. They, or at least those for whom such legislation was conceived and enacted, work to earn money. Compensation benefits were to offset or ameliorate the loss of wages. When the Supreme Court of Texas spoke in terms of ability to obtain and retain employment, it had the same thing in mind. Incapacity for work carries with it incapacity to earn.

And the charge of the Court was careful to emphasize that it was loss or diminution in capacity to earn wages which would control.[2] It fully satisfied

2. " * * * '[T]otal incapacity' does not mean an absolute incapacity to do any kind of work, but it means the incapacity to perform the usual task of a workman in such manner as to be *able to secure and retain employment*. In other words, to be totally incapacitated, a man must be incapacitated to such an extent that he cannot obtain and hold employment in competition with others.

" * * * '[P]artial incapacity' * * [means] that degree of physical disability which does not prevent one from procuring and retaining employment, but which, nevertheless, disables him from performing some of the material duties of his employment or of other classes of employment which he could have performed but for the injury, and as a result of which he is able to engage in a class of employment which is *less remunerative* than that of which he is capable of performing before his injury, and *as a result of which he suffers a depreciation or reduction in his earning capacity*.

"Stating it in another way, a man is

the Texas law. The charge makes clear that it is a reduction of the Employee's earning *capacity* which is the standard for recovery of compensation. That, of course, is not synonymous with immediate loss of earnings. The term, as we pointed out, is more complex and requires the evaluation of other factors which relate to the Employee's ability to earn wages. This is the purport and holding of the recent decisions of the Texas Courts of Civil Appeals cited above which are certainly binding on us under Erie principles.[3] In the light of applicable Texas decisions there and here cited, our earlier case of Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co. v. Gloff, 5 Cir., 1956, 238 F.2d 839, is not to the contrary.

■■ The Insurer contends that regardless of the standard applied the evidence is insufficient to support a finding of total incapacity for 301 weeks. Apparently this contention is that there was no evidence showing a continuing physical disability or any diminution of capacity to work or to earn money beyond May 9, 1957, four months after the initial, uncontested injury. The Insurer also contends that if there was any physical disability, it was due to three subsequent accidents of the Employee and not due to his initial injury. In assaying the sufficiency of the evidence it is necessary to keep certain basic principles governing trials and the distinct functions of trial courts and reviewing courts clearly in mind. It is not our function to hold a trial de novo in which the whole controversy begins anew and in which every disputed factual controversy and every possible inference is earnestly debated, measured, evaluated and tallied only to reach for the next disputed factual issue to inventory in like fashion. Williams v. National Surety Corp., 5 Cir., 1958, 257 F.2d 771. Our function as a reviewing court is the narrower one of determining whether there was any substantial evidence to support the verdict. Marsh v. Illinois Central R. Co., 5 Cir., 1949, 175 F.2d 498.

The Employee's physician, Dr. Glassman, diagnosed the plaintiff's condition as a herniated disc caused by the initial injury in which the Employee while in a half-stooping position was jerked suddenly into a jackknife position by the falling iron rods. And, of course, the Employee testified that he had had continued pain and difficulty because of the back condition. The occurrence of the initial injury never was contested. The plaintiff testified that he attempted to resume work and obtained jobs on several occasions only by not disclosing his injury or the fact that he wore a brace. Further he offered evidence by his testimony that when he worked, he worked with pain and on occasion had been aided by fellow employees who knew of his back condition. His physician testified that he would not be able to do heavy manual labor, lifting and bending. He was unable to do heavy iron work. His physician also testified that he was more susceptible to reinjury. Three subsequent accidents, viewed by the Employee's phy-

---

partially incapacitated when he can compete to some extent with other workmen in obtaining and holding employment although he cannot wholly compete with them or cannot at all times compete with them or when he can work part of the time but not all of the time, or when he can do part but not all of his work and *therefore suffers a reduction in his earning capacity*, or when he is disqualified from performing his usual labor, but is capable of performing part of the usual task of a workman of a *less remunerative* class, whereby he suffers a *reduction in earning capacity.*

\* \* \* \* \*

"\* \* \* You will not take into consideration any physical or mental pain or suffering in determining such issues unless it in some manner contributes to his incapacity to work."

3. West v. American Telephone & Telegraph Co., 1940, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139; Six Companies of California v. Joint Highway District, 1940, 311 U.S. 180, 61 S.Ct. 186, 85 L. Ed. 114; Stoner v. New York Life Ins. Co., 1940, 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284; Fidelity Union Trust Co. v. Field, 1940, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109.

sicians as temporary aggravations of the initial injury, furnished additional evidence from which conflicting inferences could be drawn. But the mere fact that the evidence was conflicting on these hotly disputed issues cannot cause the evidence offered by one side or the other to be conclusively insulated and discarded. It was for the jury to resolve the conflicting factual testimony and to reach conclusions even though reasonable men could have differed and reached a contrary conclusion. The same holds true for the evidence about his employment subsequent to the initial injury. Although the Insurer offered testimony that his employment was terminated from some of the jobs for reasons unrelated to any back injury or other physical injury, the Employee testified that he was unable to do the work required of him on some of the jobs because of his back condition. He also testified that when he worked, it was often with pain and only through the aid of fellow employees was he able to keep some of his jobs. Moreover, he testified that he obtained jobs on several occasions by not disclosing his injury or the fact that he wore support. Thus here again the question properly was before the jury to resolve.

■ ■ The District Judge submitted the case to the jury on special interrogatories under Rule 49(a), F.R.Civ.P., 28 U.S.C.A., paralleling somewhat the Texas special issue submission practice. The Insurer contends that the District Court erred in not submitting any interrogatories specifically inquiring whether the incapacity was caused by the subsequent injuries of the Employee and whether any incapacity was due to excessive drinking by the Employee. The District Court did, of course, submit an issue inquiring whether any incapacity of the Employee was caused by the initial injury.[4] This coupled with the instruction [5] to consider only such incapacity caused by the initial accident was clearly sufficient. It is clear that the Federal Rules, not the state practice, govern the procedure in suits seeking statutory compensation. Employers Mutual Liability Ins. Co. v. Blunt, 5 Cir., 1955, 227 F.2d 312, certiorari denied, 350 U.S. 994, 76 S.Ct. 543, 100 L.Ed. 859; Millet v. Godchaux Sugars, 5 Cir., 1957, 241 F.2d 264, 265; 2 Barron & Holtzoff, Federal Practice & Procedure § 1052 (1950 & 1958 Wright Supp.) The issue submitted by the Court was a fair submission of causation. Clegg v. Hardware Mutual Casualty Co., 5 Cir., 1959, 264 F.2d 152, and we find it unnecessary to decide whether under the Texas decisions cited by the Insurer the Texas practice of special issue submission would have required additional special questions. Under the federal practice the ultimate question of fact was clearly submitted to the jury.

Since the jury found total incapacity for a temporary period and no partial incapacity, we find it unnecessary to determine whether the Texas decisions approving submission of partial incapacity in terms of a percentage are correct or must be followed in a federal court.

4. "Do you find that the injury so sustained by * * * [the Employee] in the course and scope of his employment on February 13, 1957, was a producing cause of any incapacity to perform the usual tasks of a workman?"

"* * * [Y]ou are instructed that by the term 'producing cause' is meant that cause which in a natural and continuous sequence produces a condition or incapacity and without which such incapacity or condition would not have occurred."

5. The instruction to the jury on the issue of factual causation was clear and adequate.

"You are further instructed that in considering the issues in this charge with respect to the plaintiff's incapacity, in determining the amount of such incapacity, you will not take into consideration any physical or mental pain or suffering in determining such issue unless it in some manner contributes to his incapacity to work.

"* * * You are instructed that you may only take into consideration such incapacity of disability that resulted from the injury sustained by him in the course and scope of his employment by Linbeck Construction Company on February 13, 1957."

■ The Insurer contends that the manner in which the jury reached a verdict was "grossly erroneous and unjust." The transaction objected to is set out fully in the District Court's opinion, Truitt v. Travelers Ins. Co., supra, 175 F.Supp. 67, at pages 72–73. We do not think that the District Court misled or coerced the jury in instructing them that their answers to two of the questions were not consistent. Nor do we think the instructions to the jury in response to their question were improper.

We find no error in any of the other actions complained of.

Affirmed.