

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

March 14, 1961

Honorable David W. Ratliff, Chairman
Labor and Management Relations Committee
Senate of the State of Texas
Austin, Texas

Opinion No. WW- 1018

Re: Whether the "agency shop"
clause in labor union con-
tracts contravenes Sec. 8a,
Article 5154a; Sec. 2, Art.
5207a; and Section 1, Art.
5154g; V.A.T.C.S.

Dear Senator Ratliff:

The Senate Committee on Labor and Management Relations
has requested an opinion as follows:

> "Does the 'agency shop' clause contravene
> existing statutes of the State of Texas by
> requiring that employees covered by the clause,
> who fail voluntarily to acquire or maintain
> membership in the union, as a condition of
> employment, pay to the union each month a
> service charge or fee as a contribution toward
> the administration of the agreement and the
> representation of such employees?"

Your letter points out that many out-of-state companies
have negotiated collective bargaining agreements with various
unions containing "agency shop" clauses, which companies have
branch plants in Texas, and that some Texas corporations are
being pressed to sign contracts containing this clause. Your
Committee is interested in this problem to see if corrective
legislation is required.

The standard "agency shop" clause in a contract between
the union and management requires each employee who fails
voluntarily to acquire and maintain membership in the union,
as a condition of employment, to pay to the union each month
a service charge as a contribution toward the administration
of the contract and the representation of such employees. Such
service charge is usually in an amount equal to the union's
regular initiation fee and a month's dues for the first month

after the contract goes into effect, and for each month thereafter in an amount equal to the regular monthly dues.

Section 8a of Article 5154a, Vernon's Civil Statutes, reads as follows:

> "It shall be unlawful for any labor union, labor organizer, any officer, any agent, or representative or any member of any labor union to collect, receive or demand, directly or indirectly, any fee, assessment, or sum of money whatsoever, as a work permit or as a condition for the privilege to work from any person not a member of the union; provided, however, this shall not prevent the collection of initiation fees as above stated." (Emphasis added).

Section 2 of Article 5207a, Vernon's Civil Statutes, reads as follows:

> "No person shall be denied employment on account of membership or non-membership in a labor union."

Section 1 of Article 5154g, Vernon's Civil Statutes, reads as follows:

> "It is hereby declared to be the public policy of the State of Texas that the right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization and that in the exercise of such rights all persons shall be free from threats, force, intimidation or coercion."

It is clear from a reading of the foregoing statutes that it was the intention of the Legislature to make membership or non-membership in a labor union a voluntary matter with each individual worker, and to protect him in his right to continue to work at his job, regardless of his decision. Section 1 of Article 5154a, V.C.S., reads in part as follows:

> "Because of the activities of labor unions affecting the economic conditions of the country and the State, entering as they do into practically every business and industrial enterprise, it is the sense of the Legislature that such organizations

Hon. David W. Ratliff, Page 3, (WW- 1018)

> affect the public interest and are charged with a public use. <u>The working man, unionist, or non-unionist, must be protected. The right to work is the right to live</u>. (Emphasis added).

The Agency Shop Contract is of fairly recent origin. Heretofore, the three usual types of union security have been: the Closed Shop; the Union Shop; and the Maintenance of Membership Arrangement.

Under the <u>Closed Shop</u> contract the employer can hire only union members, and is forced to discharge employees failing to maintain their membership in good standing in the union.

Under the <u>Union Shop</u> contract the employer can hire without regard to union membership, but the employee must become a union member within a specified time and thereafter maintain his membership in good standing.

The <u>Maintenance of Membership Arrangement</u> allows the employer to hire without regard to union membership or non-membership, but during a specified limited time at the beginning of the contract or of being employed, as the case might be, every employee must decide whether or not he will join or remain a member of the union. Those who choose to join must remain members until the next so-called "escape period" which occurs at the beginning of each contract renewal. However, those employees electing not to join the union are free to remain as non-union employees for the life of the existing collective bargaining agreement.

If it be argued that the Agency Contract does not require any person to become a member of a labor union as a prerequisite to obtaining or holding a job, then let it be noted that Sec. 8a of Article 5154a, <u>supra</u>, prohibits the collection of any fee, assessment or sum of money whatsoever as a condition for the privilege to work from any person not a member of the union. Indiana, a right-to-work state, has held that the agency shop is lawful under <u>its</u> laws, but did so on the ground that the Indiana right-to-work law is penal in nature, and must, therefore, be strictly construed. There being nothing in the Indiana statute which specifically prohibits the agency contract, the court held that under a strict construction of the penal law the agency shop contract could not be considered to be covered by the Indiana act by implication. <u>Meade Electric Co. v. Hagberg</u>, 159 N.E.2d 408 (Ind. App., 1959).

While the Agency Shop Contract as a type of labor union con-

tract was not in vogue at the time of the enactment of Article 5154a, the Legislature certainly intended to cover this type of contract when it enacted Section 8a of Article 5154a, by whatever name it came to be called in later years. But aside from Article 5154a, the agency shop contract violates Section 2 of Article 5207a and Section 1 of Article 5154g, since the required payment of the service charge is tantamount to compulsory membership in a labor union, and upon failure to pay the service charge, results in loss of the non-union worker's job, if the contract is enforced. The payment of the service charge makes the non-union member subject to all of the pecuniary liabilities of the union member, without any corresponding privileges. He is, in effect, a disenfranchised union member against his will.

In A. F. of L. v. Mann, 188 S.W.2d 276 (Civ. App., 1945) the Court was called on to construe Article 5154a. In construing Section 8a of Art. 5154a, the Court referred to closed shop contracts, and the arguments made by appellants that the fee charged against non-union workers was a part of the cost to such union in obtaining and maintaining union conditions and servicing the employees on the job. Indicative of the intent of the Court to apply Section 8a to more than the closed shop contract is the following language at page 285:

> "... enforced collection by unions from non-union employees for such benefits as a right to work is another matter, Carried to its logical conclusion, the same reasoning would justify such exactions on any job wherein unions are involved, whether under closed-shop contracts or not; and ultimately could lead to the same policy toward all labor, on the ground that all labor had benefited from union efforts. Thus the public interest is so affected by the practice prohibited in Sec. 8a, and the potential abuses and injustices to laborers who are not members of an organized union, whether from choice or inability to become so, that the Legislature was warranted in forbidding such practice. (Emphasis added).

If any Texas statutes affecting labor do not apply in any given situation, it will be because the Congress has pre-empted the field with its own legislation with regard to the particular facts of the case. Certain acts and conduct, such as peaceful picketing of an employer's place of business in an industry af-

Hon. David W. Ratliff, Page 5 (WW-1018 )

fecting interstate commerce, has been held by the Supreme Court of Texas, in Ex Parte Twedell, 309 S.W.2d 834 (1958), to lie outside the jurisdiction of our state courts.  But membership in a union as a prerequisite to obtaining or holding a job is a different matter.  Congress has made an exemption in favor of the states in the Labor Management Relations Act, 1947, in 29 U.S.C.A. Sec. 164 (b), which reads as follows:

> "Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law."

In Finney et al v. Hawkins, 54 S.E.2d 872, the Supreme Court of Appeals of Virginia was called upon to construe Virginia's "Right-to-Work" law, Section 1 of which reads as follows:

> "It is hereby declared to be the public policy of Virginia that the right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization."

The Virginia court stated in the Finney case at page 877:

> "As pointed out in the state court decisions in State v. Whitaker, (45 S.E.2d 860) ...., and Lincoln Federal Labor Union No. 19129 v. Northwestern Iron & Metal Co., 149 Neb. 507, 31 N.W.2d 477, recent federal legislation makes clear that Congress did not intend to interfere with the right of States to prohibit agreements requiring membership in a labor organization as a condition of employment.... 29 U.S.C.A. Sec. 164 (b)."

> "....

> "There was evidence to be found in the acts of many States and of the Federal Congress to support the view that discrimination against employees because they did or did not belong to a union was against the public interest and should not be allowed.  Laws merely regulating the union obviously would not accomplish that purpose.  Basically,

agreements involving such discri-
mination are hostile to our free
enterprise system and to individual
liberty of choice and action.  Legis-
lation that protects the citizen in
his freedom to disagree and to decline
an association which a majority would
thrust upon him on the ground that it
knows what is best for him, does no
violence to the spirit of our funda-
mental law.  The protection of minorities
is the boast of our institutions and a
basis of their asserted superiority
over totalitarian regimes.  The results
have demonstrated the value of the
democratic process."

In response to your question, we hold that the "Agency Shop" clause in a contract between a labor union and management contravenes and is in violation of Section 8a of Article 5154a; Section 2 of Article 5207a; and Section 1 of Article 5154g of Vernon's Civil Statutes.

S U M M A R Y

The "Agency Shop" clause in a contract
between a labor union and management
violates Sec. 8a, Art. 5154a; Sec. 2,
Art. 5207a; and Sec. 1, Art. 5154g,
V.C.S.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Riley Eugene Fletcher
Riley Eugene Fletcher
Assistant

REF:rd

Hon. David W. Ratliff, Page 7 (WW-1018)

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Joe McMaster
Jack Price
Martin DeStefano
Raymond Loftin

REVIEWED FOR THE ATTORNEY GENERAL

By:  Morgan Nesbitt

4886