**BITUMINOUS CASUALTY CORPORATION,**
Appellant,

v.

Merle Thomas **METCALF**, Appellee.

No. 16234.

Court of Civil Appeals of Texas.

Fort Worth.

June 23, 1961.

Rehearing Denied July 14, 1961.

Harris, Anderson, Henley & Rhodes, and William B. Henley, Jr., Dallas, for appellant.

Peery & Wilson, and Bob L. Wilson, Wichita Falls, for appellee.

BOYD, Justice.

Bituminous Casualty Corporation appeals from a judgment, rendered by the court without the intervention of a jury, whereby Merle Thomas Metcalf was awarded compensation in the amount of $3,924.51 for two weeks of total disability and for permanent partial disability.

No findings of fact were made separately from conclusions of law. In the judgment the court found that appellee's average weekly wage earning capacity during the period of partial disability was and will be $86. It was further found, as stipulated by the parties, that appellee's average weekly wage prior to his injury should be computed upon an average daily wage of $18.93, said average weekly wage having been $109.21. It was decreed that the compensation should be paid in a lump sum after allowing the statutory discount.

Appellant seeks reversal by nine points of error, briefed in groups of three each, whereby it is contended that there was no evidence to show that appellee was partially incapacitated within the meaning of the Workmen's Compensation Law; that there was no evidence to support the finding that appellee's partial incapacity, if any, was permanent; that there was no evidence to support the holding that a loss of actual earnings is sufficient to show partial incapacity, when it was not shown that appellee had suffered any loss of wage earning capacity by reason of physical inability to work. Each of the above contentions is followed by the propositions that the evidence was insufficient to support the findings complained of, and that such findings were so against the great weight and preponderance of the evidence as to be clearly wrong. We are unable to agree with appellant's contentions.

Appellee is a welder, and was injured while members of the working crew were mounting draw-works motors on a substructure. Appellee was melting oilers for chain guards near one side of the substructure; another welder was working on the other side; someone opened a butane line to start the motors; as appellee lit a cutting torch, there was a flash fire which burned his face, neck, ears, and hair. His hair was blazing, and he put out the fire. It was two months or more before he needed a hair cut. His lips were numb, and he had no feeling in his face. His face was black. He was immediately taken to a hospital, where he stayed less than two days, and was given several hypodermics and other treatment. After leaving the hospital he stayed in bed at home for four or five days. In about two weeks from the time of the accident he returned to work for the same employer, doing the same kind of work.

Appellee testified that prior to the injury and for a short time after he returned to the job, his employment was all outside work; when he returned after the injury, his face was sensitive to sunshine, heat, and cold, and " * * * it hurt me too much to stay with it * * *"; he said he had to get in out of the weather to protect his face, " * * * keep from burning it up"; he secured employment with another employer, doing inside work. He was working for that employer at the time of the trial, making his employment continuous since about two weeks after the injury. His wages since changing employers have averaged about $80 per week.

Appellee further testified:

" * * * Dr. Cook told me it would take several years for it to even start to get back to normal, and I asked Dr. Wilson, and he said it would just take several years for it to come back to even where it would be back like it was. In fact, he said I would always be sensitive to my ears, and that big word he used, anyway, it is these places on each side of your nose; in your cheeks, in other words * * *.

"Q. Now is that just rather raw on each side of your nose there? A. No, he called it some kind of a skin disease that—oh, I don't know how he put it. Anyway, it has got the hide down close to the blood vessels or something. I don't know what he was talking about. He said that would be sensitive for a long time. I know one thing; I can't scratch my face. Anytime I scratch it, it sure does bleed." Appellee said his eyes did not focus like they used to. "It blurs off at a distance"; his ears are "soft and flexible"; and in cold weather he could not keep them warm without wearing ear muffs, and he could not wear ear muffs and weld. When asked by appellant if he thought he could do outside work now, appellee said he could, but that he got away from it " * * * on account of my face. I am trying to protect my face."

We think there was substantial evidence to support the challenged findings, and that the findings were not against the weight and preponderance of the evidence. Although appellee testified that it was im-

possible to make as good wages with an inside welding job as with an outside one, because he could not get so much overtime, the law seems to be settled that it is not necessary to show an economic loss in order to recover permanent disability benefits. Our holding seems to be supported by the following authorities: Dohman v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 285 S.W. 848; Hartford Accident & Indemnity Ins. Co. v. Miller, Tex.Civ.App., 5 S.W.2d 181; Commercial Cas. Ins. Co. v. Strawn, Tex.Civ.App., 44 S.W.2d 805, error refused; Texas Employers' Ins. Ass'n v. Taylor, Tex. Civ.App., 276 S.W.2d 901; Smith v. Consolidated Cas. Ins. Co., Tex.Civ.App., 290 S.W.2d 589.

The judgment is affirmed.