**STANDARD ACCIDENT INSURANCE COMPANY, Appellant,**

v.

**Raymond D. MIZE, Appellee.**

**No. 7346.**

Court of Civil Appeals of Texas.

Amarillo.

April 20, 1964.

Rehearing Denied May 18, 1964.

Crenshaw, Dupree & Milam, Lubbock, for appellant.

Lawrence F. Green and Winston P. Brummett, Lubbock, for appellee.

CHAPMAN, Justice.

This is an appeal by Standard Accident Insurance Company from a judgment based upon a jury verdict for Raymond D. Mize in a suit filed by him under the Workmen's Compensation Act for accidental injuries received while an employee of Maxey Construction Company.

The suit was filed as a general injury case. The jury found appellee totally disabled for six weeks and partially permanently disabled following the six weeks of total disability. The first point contends the finding of the jury of partial permanent incapacity is against the great weight and preponderance of the evidence. To pass upon the point requires a review of all the testimony. In re King's Estate, King v. King, 150 Tex. 662, 244 S.W.2d 660.

Appellee went to work for Maxey Construction Company in 1946 when he was 16 years of age, immediately after high school graduation. He went to work as a common laborer doing only heavy physical work and by 1949 had worked himself up to the position of journeyman carpenter. That year he was made a combination carpenter and supervisor and continued working as such until the injury on July 24, 1959.

At about 5:30 p. m. the day of his injury appellee was moving sheets of plywood to cover holes in the first floor of a church building under construction when he accidentally stepped into a hole in the floor that had been covered with Sizo-Kraft paper. He fell fourteen or fifteen feet to the concrete floor in the basement, was knocked unconscious and did not regain consciousness until 10:30 that night after he had been carried to the hospital by the church janitor.

He was hospitalized ten days, suffering from pains all over his body " * * * like somebody had threshed me with a baseball bat all over." His wrists were in pain, as was his neck, back and ribs " * * * and that low back was what was hurting me the worst," he testified.

A back brace was prescribed for him by his physician, Dr. Stiles, which he wore for six to eight months. He continued to see Dr. Stiles for several months, still suffering with pain in his back and neck.

While still wearing his brace on his back he started going back to the construction job after about six weeks following the injury. He would do some supervisory work, resting from time to time, or go home at intervals to rest.

His employer continued to pay him $150.-00 per week. Both appellee and Mr. McAbee, general construction superintendent, testified it was a company policy with key employees to pay their salary right straight through when they were sick or injured. Mr. McAbee testified appellee was in the category in which such rule was applicable. Mize continued to work in an advisory capacity drawing his regular salary, trying to do some light carpentry work and had a salary increase of $25.00 per week during the time.

In the summer of 1960 while still suffering from pains in his back the claim adjustor for appellant sent him to Dr. R. Q. Lewis, an orthopedic surgeon, who x-rayed him and placed him on physical therapy and exercises. He testified he could not take the exercises because of the back pain. Dr. Lewis sent him to Dr. Jack Dunn, a neurosurgeon, and he sent him to Dr. Bronwell for removal of a tumor from his hip. The tumor soon healed and gave no further trouble. He testified the soreness in his back and down his legs continued to bother him up to the time of trial. The claim adjustor also authorized Mize to take treatments for three weeks from Dr. Blair, a chiropractor. He continued the treatments to the day of trial, though the insurance company agreed to pay for only three weeks. Dr. Blair treats only the neck and will not testify in court.

Mize was next sent by his attorneys to Dr. Lansford, a chiropractor. He took x-rays, examined him and testified in the trial. He found the right hip about three-fourths of an inch lower than the left; a half-inch difference in the left leg and the right leg, with an imbalance in the pelvis; a compression of the disc at the fifth lumbar-sacral area, with nerve root pressure and with a forward displacement of the fifth lumbar vertebra. He also found some rotation of the fifth cervical vertebra with consequent nerve root pressure in that area and a narrowing at the fourth and fifth lumbar interspace, with probable nerve root pressure. He found no congenital abnormality. He testified in response to a hypothetical question giving the nature of the fall, the treatments used and the pains testified to by Mize, that in his opinion the conditions described in his neck and back are permanent and he would be unable to do his type of work regularly.

In answer to issues submitted the jury found the partial incapacity began on September 4, 1959, which is the day he reported back to work still wearing his brace and still under treatment of a doctor. He did little manual labor and took rest periods. The jury gave him six weeks of total incapacity and found his partial incapacity started immediately thereafter. They found his partial incapacity to be permanent.

Dr. Lewis testified Mize's problem was primarily postural, super-imposed upon a congenital defect in his back, though in his report to appellee's counsel on July 30, 1962, he did not mention posture.

Maxey Construction Company dissolved in February 1962, after Mr. Maxey's death and appellee went to work for Republic National Life Insurance Company in April 1962, as a sales representative. To December 1962, he had earned $2,100.00 and the company representative testified he would probably earn less than $3,000.00 in 1963. Appellant contends that the jury's answer of $70.00 per week reduction in appellee's wage-earning capacity is contrary to the great weight and preponderance of the evidence because his employer, Maxey, continued to pay him his regular scale of pay and even raised him $25.00 per week.

In speaking of a workman's rights under the Workmen's Compensation Act in a situation such as that shown by Mize in this case it has been textually stated that:

"If his capacity and efficiency to work are not the same as before the injury he is entitled to compensation regardless of the fact that he was paid, after the injury, as much or more than he earned prior to or at the time of the injury." 45 T.J., Workmen's Compensation, Section 161, Page 589.

In Hartford Accident & Indemnity Ins. Co. v. Miller, Tex.Civ.App., 5 S.W.2d 181 (writ dismissed) our court has held:

"While the evidence discloses that the plaintiff has been receiving the same or larger wages than he received prior to his injury, there is evidence that his earning capacity has been seriously affected, and his capacity or incapacity is not to be measured solely by the fact that he has received such wages since his injury, and, in the event he should lose his position with his present employer, the injury received by him has seriously affected his earning capacity."

The Fort Worth Court of Civil Appeals has held: "* * * it is not necessary to show economic loss in order to recover permanent disability benefits." Bituminous Casualty Corporation v. Metcalf, Tex.Civ. App., 348 S.W.2d 270 (N.R.E.).

In Consolidated Casualty Insurance Company v. Smith, Tex.Civ.App., 309 S.W. 2d 80 (N.R.E.) the Houston Court of Civil Appeals has held: "That workman has earned more money per week since returning to work than he had averaged during the year preceding his injury was not conclusive on issue of impaired earning capacity."

The Fifth Circuit Federal Court in Travelers Insurance Company v. Truitt, 5 Cir., 280 F.2d 784, at page 787 has held:

"* * * the fact that an injured employee resumes work after an injury and earns substantially the same as before the injury is not a conclusive indication that there has been no loss of earning capacity, but is evidentiary only."

The quote from our court in Hartford Accident & Indemnity Ins. Co. v. Miller, supra, recites almost the identical situation we have here if appellee and his witness, Dr. Lansford, are to be believed. While this writer if passing upon the credibility of witnesses would be more inclined to believe the testimony of Dr. Lewis, the M.D. witness used by appellant, this court cannot say the jury did not have a discretion in rejecting his testimony and believing Dr. Lansford. His testimony shows he had more than three years in Texas Tech; two years in the Texas Chiropractic College in San Antonio; two years in Carver's Chiropractic College in Oklahoma City, and various postgraduate courses; that he had a D.C. degree, a Ph.C. degree in his profession and eight years of practice; that his chiropractic training included the study of taking and reading x-rays. Additionally, the jury had the testimony of appellee to the effect that he continued to have disability, with pain even on getting in and out of his automobile which he had to use in selling insurance.

The Eastland Court of Civil Appeals in Texas Employers Insurance Association v. Price, Tex.Civ.App., 336 S.W.2d 304, 308 (N.W.H.) has held: "The fact that appellee's testimony was in conflict with expert opinion testimony concerning the extent of his disability did not, under the circumstances, render it insufficient to support the verdict," citing a number of cases. Among those cited is Associated Employers' Lloyds v. Self, Tex.Civ.App., 192 S.W.2d 902 (N. R.E.), holding: "* * * that such evidence left an open question for the trier of facts, and the jury having answered in favor of the injured party, courts of appeal have no authority to disturb the judgment." Accordingly, we hold appellant's points urging the jury verdict of partial permanent and a reduction of wage-earning capacity

of $70.00 per week as being against the great weight and preponderance of the evidence are without merit.

■ Appellant next urges reversible error of the trial court in permitting a trial amendment to include aggravation of a pre-existing condition and the definition thereof after both parties had closed and before the charge was read to the jury.

Rule 66, Vernon's Ann. Texas Rules, authorizes the filing of such amendment where the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him and provides the court may grant a postponement to enable the objecting party to meet such evidence.

■■ Granting such amendment is largely discretionary with the trial court. Gulf, Colorado & Santa Fe R. Co. v. Bliss, Tex., 368 S.W.2d 594. Such discretion will not be disturbed in the absence of a showing of clear abuse. National Life & Accident Ins. Co. v. Hines, Tex.Civ.App., 50 S.W.2d 364 (N.W.H.). We do not believe such a showing was made here.

"Where the discretion of the trial court is not abused, he may permit the filing of a trial amendment after the testimony has been closed." National Mutual Ben. Ass'n v. Aaron, Tex.Civ.App., 45 S.W.2d 371; Continental Paper Bag Co. v. Bosworth, 269 S.W. 83 (Com.App.); Gulf Casualty Co. v. Tucker, Tex.Civ.App., 201 S.W.2d 81 (N.W.H.); Vermillion v. Haynes, 147 Tex. 359, 215 S.W.2d 605.

No complaint was made of surprise nor was a motion filed by appellant for continuance. Having failed to do so, the trial court committed no reversible error in allowing the amendment. Hardage v. Rouly, Tex. Civ.App., 349 S.W.2d 616 (N.R.E.); Dirks v. Dirks, Tex.Civ.App., 302 S.W.2d 471 (writ dismissed). This is especially true when we consider the fact that the alleged pre-existing conditions of congenital defect or postural defect were brought into the case by appellant's witness and that it had not been raised by any pleading.

■ Appellant next urges reversible error for failure to submit its requested issues one through four inquiring if the disability, if any, was not caused solely by a postural defect or by the tumor on plaintiff's hip.

Issues in substantially the same language were given in the main charge in issues fourteen and fifteen and answered against appellant. As heretofore stated they were not raised by appellant's pleading. We find no reversible error in such refusal. Aetna Casualty & Surety Company v. Stone, Tex. Civ.App., 344 S.W.2d 895 (N.W.H.); Safety Casualty Co. v. Teets, Tex.Civ.App., 195 S.W.2d 769 (writ refused).

■ Appellant next claims reversible error in overruling its objection to special issues five, six and eight as being upon the weight of the evidence. Number five asks: "On what date do you find from a preponderance of the evidence that such total incapacity, if any, began?" The defendant has long since voluntarily paid the six weeks total incapacity, so there could be no reversible error in failing to use "if any" after the word "date." The same rule would apply to issue number six.

■ Issue eight inquired if appellee "* * * has sustained or will sustain partial incapacity as a natural result of said accidental injury or injuries, if any, received on or about July 24, 1959." The complaint is that "if any" was not included after "July 24, 1959." There is no controversy but that was the date appellee was injured, so the jury could not have been influenced by the form of the issue.

■ Appellant next urges error because the trial court inquired of counsel in the corridor, allegedly in the presence of some of the jurors, as to whether the parties were any closer to a settlement. The court's qualification of the bill to the effect that in his opinion no juror heard his inquiry and the fact that no showing is made that they heard such statement would preclude us from finding reversible error.

Rule 327 provides in part that where the ground of the motion is because of any communication made to the jury, the court shall bear evidence thereof from the jury or others in open court and shall grant a new trial if from the communication made it reasonably appears that injury probably resulted to the complaining party.

Reversible error is not shown in the absence of a showing of probability of harm. Ross v. Texas Employers' Ins. Ass'n, 153 Tex. 276, 267 S.W.2d 541. No such showing is made here that any of the jurors even heard the judge's question to counsel.

Finding no reversible error, the judgment of the trial court is in all things affirmed.